LUCIUS F. MILLS, Plaintiff in Error, v. HENRY M. POST, ADMINISTRATOR, Defendant in Error.

### October 28, 1879.

Where a trust fund has been by the trustee converted to his own use, if it can no longer be identified as a separate and independent fund or value, the right to follow the specific fund into the hands of the trustee's administrator is gone.

ERROR to St. Louis Circuit Court.

*Affirmed.*

JOHN P. ELLIS, for plaintiff in error, cited: Cent. L. J. 51-75; *Brocchus* v. *Morgan*, 5 Cent. L. J. 53; *Cook* v. *Tullis*, 18 Wall. 332; *Ex parte Hobbs*, 14 Nat. Bank Reg. 495; *Greene* v. *Haskell*, 5 R. I. 456.

T. A. & H. M. POST, for defendant in error.

BAKEWELL, J., delivered the opinion of the court.

The petition alleges that plaintiff, at dates named, placed in the hands of defendant's intestate two sums, amounting in the aggregate to $3,000, to be invested in behalf of plaintiff in contracts for organs,— decedent to account to plaintiff for the funds so invested, and to receive as compensation, as trustee and agent of plaintiff, one-half of the profits;

that for the principal and residue of the profits he was to account to plaintiff on demand. It was further agreed that the business was to be conducted and the accounts kept in the name of "Joseph Mills, trustee;" in the event of the death of defendant's intestate, plaintiff to take charge of the fund so invested, and to have full control of settling the business. Deceased received the funds, and deposited them in the Clerk's Savings Bank in the name of "Joseph Mills, trustee;" but before his death, in violation of the trust, deceased, without plaintiff's knowledge or consent, took the entire sum except $159 and invested the same in his own business and converted the same to his own use. The amount so taken has been by deceased so mingled and confused with the individual estate of the deceased as to be incapable of separation from the general mass. That at the time of the death of Mills there was in his hands, uninvested, the said sum of $159, which defendant wrongfully claims and holds as part of the estate of his intestate; and that there is in defendant's hands as administrator the sum of $3,000 in money, and other property inventoried at $40,000. The prayer is that the assets be impressed with a trust to the amount of the fund wrongfully converted, that an accounting be had, and defendant required to pay out of the assets to plaintiff the amount converted, and also $159 and interest.

Defendant demurred, on the ground that the petition did not set forth facts sufficient to constitute a cause of action. The demurrer was sustained; and plaintiff declining further to plead, there was final judgment.

It is well settled that where a trustee converts trust funds into another species of property, it will be held liable to the rights of the *cestui que trust* if its identity can be traced under the new form. The *cestui que trust* is held to be, in equity, the owner of the new property, and it is accordingly decreed to him. But this is only when the identity can be established; and in the case supposed, it must be proved

clearly that the very fund pursued has been paid out for the identical property which is to be affected with a trust. Where the subject-matter of the trust has been turned into money, or was originally money, and the means of ascertainment fail, owing to its being mixed and confounded with the mass of the estate of the trustee, the right to follow the property ceases, because that right depends upon the power of identifying the original property through any change of its original state and form.

The *cestui que trust* may follow the money into the hands of a banker, if the account, though in the individual name of the trustee, is not complicated with funds belonging personally to the trustee ; and even if the trustee has deposited his own money in the same account, and withdrawn part of the trust fund for his own purposes by checks, yet if by applying the checks to the earliest items of deposit, whether of the trust fund or the trustee's money, and reducing the earliest items *pro tanto*, it can be clearly seen that any of the trust fund remains in the bank, under this rule, any exact amount thus clearly remaining of the trust fund will be applied to the trust. *Pennell* v. *Deffell*, 4 De G. M. & G. 372. The substantial identity is thus established ; and where this can be done, the later cases, both English and American, hold that the separate fund may be followed though the actual ear-marks, as in the case of money not in a bag, be lost. An interesting review of the cases which uphold this doctrine will be found in 5 Central Law Journal, pp. 51–75.

But it appears from the statements of the petition, not only that there were no ear-marks to the sums which plaintiff seeks to stamp with a trust, but that they had gone into currency, and substantial identity is lost. The money received was mixed by deceased with his own, and was used as his own. He became thereby the debtor of plaintiff, but plaintiff lost his grip of the specific fund.

We are referred to *Brocchus* v. *Morgan*, a decision of

the Supreme Court of Tennessee, reported in 5 Cent. L. J. 53. But there the trust fund was followed into and out of a deposit in a bank, of which it had formed a part, and thence into the hands of a receiver. Twenty-five hundred dollars left for safe-keeping with a firm, to be placed for a few days in their safe, was, in violation of this understanding, deposited by these trustees to their firm-account in bank. A few days afterwards one of the partners died, and the survivor checked out all the deposits of the firm, amounting to $4,216, in which amount was included the $2,500 of trust-moneys deposited, which, it appears from the statement of the case, had never been checked out. This sum, including the trust fund, was then placed in the hands of a receiver for the creditors of the firm, and was recovered from him, it never having passed out of his hands. But in that case it appeared that the fund thus deposited had never been withdrawn from the bank until it was placed in the receiver's hands ; and unless this had been shown, it would have been subject to distribution amongst the general creditors.

The case of *Hobbs* v. *Hapgood*, 14 Nat. Bank Reg. 495, merely follows the rule in *Pennell* v. *Deffell*, *supra*, that where a trustee has deposited the trust-funds in bank, with his own, in his own name, and, by taking deposits and withdrawals in the order of their date, it can be certainly ascertained how much of the balance belongs to the trust and how much to the general fund, the trust still attaches to so much as is thus shown to belong to the trust, and the division between the trust fund and the general fund may be made accordingly.

In these cases there is no such mixture that the trust fund cannot be identified. It is, to use the illustration of Lord Justice Bruce in *Pennell* v. *Deffell*, as if the very coins were placed by the trustee in a chest, in which he had afterwards placed coins of his own, of a known amount, had never taken any of the money out, and then died.

The coins would be so mixed that it could not be said of any particular gold piece that it was or was not of the trust fund. It is nevertheless certain that the identical trust fund is in the chest, and the fact that the executor of the trustee might be entitled to withdraw from the chest the sum that could be shown to be in every sense the property of the deceased would not impair the right of the *cestui que trust* to the clearly ascertained remainder.

But such a case, and the cases cited of a deposit made in bank in the trustee's own name and never withdrawn, to which has been added moneys belonging to the trustee, have no analogy to the case stated in the petition. As to $2,841 of the trust-moneys, it is expressly alleged that they were so invested by the trustee and mixed with his own funds that they cannot be separated; and as to the remaining $159, there is no allegation that they were deposited in any chest, or in any bank, where they remain in specie, or in such a way that it can be shown that that particular portion of the original deposit was never used by the trustee for his private purposes. There is nothing in the petition from which it can be gathered that plaintiff can trace any portion of the assets in the hands of the administrator as his own, or distinguish it or its proceeds from the mass of property of his trustee. It can no longer be identified "as a separate and independent fund or value." The allegation of the petition, that "at the time of the death of Mills there was in his hands of said trust fund, uninvested, the sum of $159, which is now wrongfully held by defendant," is not equivalent to a statement that, of the amount originally deposited by Mills, $159 remained still on deposit, and which had never been withdrawn by him, and that this separate fund thus passed to his executor and is still held by him. The petition rather seems to negative this idea.

The judgment of the Circuit Court is affirmed. All the judges concur.